UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| MARK E. AMESBURY,<br>    Plaintiff,<br><br>v.<br><br>CITY OF PAWTUCKET; WILLIAM D.<br>VIEIRA, SR.; DONALD R. GREBIEN;<br>DONNA M. PINTO; MICHAEL<br>POLACECK; and MELISSA C.,<br>    Defendants. | C.A. No. 19-342-JJM-LDA |

## ORDER

Mark E. Amesbury operates Polytechnic, Inc. in Pawtucket, Rhode Island. He files this lawsuit against the City of Pawtucket and certain of its officials and employees (collectively "the City").[1] He alleges a seventeen-claim complaint based on 42 U.S.C. § 1983 for deprivation of his Fifth Amendment rights (through the Fourteenth Amendment) to property and due process.[2] He complains about the City "wrongfully ordering [him] to install a Radio Master Box for the existing fire alarm system" at his place of business. ECF No. 1 at 8. He makes various other factual allegations against the City and its Zoning and Enforcement Department (the

---

[1] The Defendants are (i) the City of Pawtucket, (ii) William D. Vieira, Sr. (Director of Zoning and Code Enforcement); (iii) Donald R. Grebien (Mayor of the City of Pawtucket); (iv) Donna M. Pinto (Zoning Department Employee); (v) Michael Polaceck (Fire Marshall of the City of Pawtucket); and (vi) Melissa C. (last name unknown) (Zoning Department employee).

[2] Mr. Amesbury filed a lawsuit against the City that the Court dismissed when he did not oppose the Defendants' Motion to Dismiss for lack of jurisdiction. *See Amesbury v. City of Pawtucket*, C.A. No. 19-cv-82-JJM-LDA, ECF No. 7.

"Zoning and Enforcement Department") about interactions between the City and his business. *See generally*, ECF No. 1 at 8-53. The factual allegations against the City that Mr. Amesbury included in his complaint started in 1991.

As detailed further below, the City moves to dismiss each claim in the complaint based on the statute of limitations, absolute immunity, and/or a failure to state a claim upon which relief can be granted. ECF No. 6.

ANALYSIS

*Statute of Limitations*

Mr. Amesbury asserts several Fifth Amendment due process and takings claims, under 42 U.S.C. § 1983. The United States Supreme Court "directs federal courts adjudicating civil rights claims under 42 U.S.C. § 1983 to borrow the statute of limitations applicable to personal injury actions under the law of the forum state." *Rivera-Muriente v. Agosto–Alicea*, 959 F.2d 349, 352 (1st Cir. 1992) (internal quotation marks omitted); see also *Wilson v. Garcia*, 471 U.S. 261, 276-80 (1985) (§ 1983 claims subject to state statute of limitations for personal injury actions). Under Rhode Island law, the applicable statute of limitations for claims alleging a constitutional violation under 42 U.S.C. § 1983 is Rhode Island's three-year personal injury statute of limitations. *Richer v. Parmelee*, 189 F. Supp. 3d 334, 343 (D.R.I. 2016); R.I. Gen. Laws § 9-1-14(b); see also *Walden, III, Inc. v. Rhode Island*, 576 F.2d 945, 946–47 (1st Cir. 1978) (affirming that Rhode Island's three-year statute of limitations for personal injury actions applies to civil rights actions brought under 42 U.S.C. § 1983).

Because Mr. Amesbury filed his complaint on June 20, 2019, any claim for conduct that happened before June 20, 2016 is barred by the statute of limitations (absent an applicable exception to the statute).

The first ten claims describe conduct before June 20, 2016. Claims 1 through 4 describe conduct on April 26, 2016. ECF No. 1 at 8-11. Claims 5 through 8 involve a zoning violation that the Zoning and Enforcement Department assessed against Mr. Amesbury in 1993. ECF No. 1 at 11-14. And Claims 9 and 10 allege actions between 1991 and 2007 with the Zoning and Enforcement Department. ECF No. 1 at 15-18.

Mr. Amesbury, in response to the City's Motion to Dismiss (ECF No. 6), invokes equitable tolling (i.e., the discovery rule), as well as the continuing violation doctrine by asserting that the alleged conduct of the City represents a "systematic pattern of harassment" that "spans almost 30 years." ECF No. 7 at 1.

There are no plausible facts alleged that support equitable tolling or the continuing violation doctrine.

<u>Discovery Doctrine / Equitable Tolling</u>

A claim asserted under 42 U.S.C. § 1983 normally accrues at the time of the injury. *Jardín De Las Catalinas Ltd. P'ship v. Joyner*, 766 F.3d 127, 133 (1st Cir. 2014); *see also Wallace v. Kato*, 549 U.S. 384, 388 (2007). But if the facts necessary to bring a claim are unknown, the discovery rule may delay accrual until such facts "are or should be apparent to a reasonably prudent person similarly situated." *Jardín*, 766 F.3d at 133 (quoting *Nieves–Márquez v. Puerto Rico*, 353 F.3d 108, 119–

20 (1st Cir.2003). Accordingly, for the discovery rule to toll the statute of limitations, the facts supporting the cause of action must have been "inherently unknowable" at the time of the injury. *Latson v. Plaza Home Mortg. Inc.*, 708 F.3d 324, 327 (1st Cir. 2013) (holding that the discovery rule stops the limitations clock "only when the injuries are inherently unknowable at the moment of their occurrence."). The discovery rule applies "either when the [alleged] injury has lain dormant without manifestation or when the facts about causation [are] in the control of the putative defendant, unavailable to the plaintiff or at least very difficult to obtain." *Jardín*, 766 F.3d at 133 (quoting *United States v. Kubrick*, 444 U.S. 111, 122 (1979)) (internal quotation marks omitted).

The alleged conduct of the City that leads to Mr. Amesbury's cause of action in Claims 1 through 10 is not conduct "inherently unknowable" at the time of injury. Mr. Amesbury alleges (i) that he discovered that the Radio Master Box was not required by the fire code until late 2017, (ii) that he learned that he did not need to pave the parking lot at his property until May 2019, and (iii) that he did not notice the "triggering warnings" that alerted him to the alleged wrongful violations that resulted in his tenant vacating the property until 2019. ECF No. 7 at 13. Although Mr. Amesbury alleges that his discovery and notice of the alleged improper conduct occurred within the limitation period, he does not allege that he took any reasonable steps to investigate or challenge such alleged conduct at the time of its occurrence (when the effect of such alleged conduct should have reasonably been apparent). Thus, because Mr. Amesbury did not exercise reasonable diligence, he cannot take

4

advantage of the discovery rule to toll the statute of limitations for Claims 1 through 10. *See Jardín*, 766 F.3d at 133.

Continuing Violation Doctrine

Mr. Amesbury also contends that his claims are not time barred because the City's actions constitute a continuing violation. ECF No. 7 at 11. The continuing violation doctrine applies to claims that arise out of a sequence of events, when course of conduct produces a single unlawful practice. *See Centro Medico Del Turabo, Inc. v. De Melecio*, 321 F. Supp. 2d 285, 291 (D.P.R. 2004). This doctrine "creates an equitable exception to the statute of limitations because it allows recovery for claims filed outside of the statutory period when the unlawful behavior is deemed to be ongoing." *Id.* Mr. Amesbury cannot invoke the continuing violation doctrine because his claims are based on three incidents distinct from each other to the point that they cannot be aggregated to form a single unlawful practice. The three separate incidents to which Mr. Amesbury complains are (i) the "Order" from the Zoning and Enforcement Department to install a "Radio Master Box"; (ii) the Notice of Violation for "tracking mud and dirt into the street" and order to pave the parking lot; and (iii) the violation notices issued against Mr. Amesbury's former tenant that allegedly resulted in the tenant vacating Mr. Amesbury's property. ECF No. 7 at 15-17. Aside from noting that the City was involved with each alleged incident in its role enforcing zoning regulations, which alone is not sufficient to aggregate the incidents for purpose of the continuing violation doctrine (*see e.g., Coll. Hill Properties, LLC v. City of Worcester*, 135 F. Supp. 3d 10, 17 (D. Mass. 2015)), Mr. Amesbury has alleged

no plausible facts that would support tying them together to show a single unlawful practice. Thus, because Mr. Amesbury's allegations in Claims 1 through 10 occurred outside the limitation period and do not plausibly establish a continuing violation, these Claims are barred by the statute of limitations and so must be dismissed.

*Immunity*

Mr. Amesbury complains in Counts 11 and 12 that some of the City's zoning officials failed to enforce the zoning ordinance against his tenant, whom he claims was operating an illegal after-hours nightclub on his property from October 2018 through January 2019. ECF No. 1 at 18-19. Mr. Amesbury also complains that the municipal court judge violated his rights by failing to uphold fines levied against Mr. Amesbury's tenant. *Id.*

The decision to enforce a zoning ordinance involves performing a prosecutorial function. Under the doctrine of prosecutorial immunity, officials tasked with the role of performing a prosecutorial function, including the initiation of an administrative proceeding or enforcing a local ordinance, are immune from damages actions. *See Butz v. Economou,* 438 U.S. 478, 508 (1977); *Goldstein v. Galvin,* 719 F.3d 16, 26 (1st Cir. 2013). Additionally, the decision of a municipal judge to uphold (or overturn) a fine is a judicial action that is similarly immune from damages liability. *See Decker v. Hillsborough Cty. Attorney's Office,* 845 F.2d 17, 21 (1st Cir. 1988).

Thus, each allegation about which Mr. Amesbury complains in Counts 11 and 12 is an action (or inaction) that the applicable City official is entitled to immunity. The Court therefore dismisses Counts 11 and 12.

*Slander*

Counts 13 and 14 allege that a City official known to Mr. Amesbury only by her first name, slandered Mr. Amesbury when she (i) told him that his tenant told her that Mr. Amesbury "attached [sic] him with a saw" and (ii) when she claimed that the roof to Mr. Amesbury business was covered in tarps. ECF No. 1 at 20-22. Mr. Amesbury also alleges that the slander resulted in a constitutional deprivation because of his loss of $26,000 in rental income. *Id.*

To succeed in an action for defamation under Rhode Island law, a plaintiff must prove:: (1) the utterance of a false and defamatory statement about another; (2) an unprivileged publication to a third party; (3) fault amounting to at least negligence; and (4) damages. *Healey v. New England Newspapers, Inc.*, 555 A.2d 321, 324 (R.I. 1989).

It is not clear to the Court that Mr. Amesbury has alleged facts that would plausibly support an action for defamation under Rhode Island law. Reading the facts alleged by Mr. Amesbury in a way most favorable to him, however, Mr. Amesbury still fails to allege the violation of a constitutional right. While Mr. Amesbury claims that the alleged slander resulted in a loss of rental income, a due process claim cannot rest solely on reputational harm or damages that predictably flow from such reputational harm. *See Mead v. Indep. Ass'n*, 684 F.3d 226, 233 (1st Cir. 2012) *(citing Paul v. Davis,* 424 U.S. 693, 701–02 (1976)). The Court therefore dismisses Counts 13 and 14.

7

*Takings*

Counts 15 and 16 allege that the City's Fire Marshall "attempted to deprive" Mr. Amesbury of his Fifth Amendment right to property by wrongfully ordering Mr. Amesbury to install fire department connections to an existing fire sprinkler system at his property. ECF No. 1 at 22-24. Mr. Amesbury did not install these fire department connections and notes in his complaint that his son was told in late 2017 that the installation of such connections was not required. *Id.* Mr. Amesbury provides no additional facts that would plausibly support a claim that the Fire Marshall deprived him of his constitutional rights (or that any such deprivation may be real or imminent). Additionally, while Mr. Amesbury cites caselaw noting that punitive damages may be available when a defendant's acts involve "reckless or callous indifference to the plaintiff's federally protected rights," Mr. Amesbury provides no plausible facts that support such a claim. ECF No. 7 at 22. Without such facts, the Court must dismiss these claims for failing to state a plausible claim for relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Smith v. Wade*, 461 U.S. 30, 30 (1983).

*Failure to Train and Supervise*

Finally, Mr. Amesbury also alleges that the City violated his constitutional rights by failing to train and supervise its personnel. He makes these allegations in Claims 3, 4, 7, 8, 10, 12, 14, and 16, each of which fails for the reasons cited previously in this Order. Additionally, in Claim 17, Mr. Amesbury incorporates by reference the allegations made in Claims 1-16 to allege that the City's failure to train and supervise

8

its personnel resulted in a continuing untenable systematic pattern of harassment that led to the deprivation of Mr. Amesbury's constitutional rights. ECF No. 1 at 24-26. But Mr. Amesbury makes only conclusory general allegations, unsupported by plausible facts, that would support a claim for failure to train and supervise. Conclusory claims and formulaic recitations of elements of liability do not survive a motion to dismiss. *Bell Atl. Corp.*, 550 U.S. at 570. As a result, the Court must dismiss Claim 17.

CONCLUSION

For the reasons stated, the Court GRANTS Defendants' Motion to Dismiss. ECF No. 6.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
United States District Judge

September 11, 2019